## Montgomery County v. A.J.S. Enterprises, Inc.

*Frederic M. Wentz,* for Commonwealth.
*Daniel B. Michie, Jr.,* for condemnee.

508

STEFAN, *J.*, February 5, 1981—On September 14, 1978 the County of Montgomery filed a declaration of taking pursuant to the Eminent Domain Code of June 22, 1964, P.L. (Sp. Sess.) 84, art. I, sec. 101 et seq., 26 P.S. § 1-101 et seq., condemning 41.196 acres of land situate in Plymouth Township, Montgomery County, Pa. The stated purpose of the condemnation was "to preserve and use the same for sanitary landfills and for storage of machinery, equipment and vehicles in the conduct of the condemnor's, County of Montgomery's, operation of sanitary landfills and upon completion of landfill operations to use the same as a public park or other lawful County purposes." A.J.S. Enterprises, Inc., owner of the property, known as Veteran's Quarry, has filed preliminary objections to the declaration of taking, challenging the county's action as violative of the Pennsylvania Solid Waste Management Act of July 31, 1968, P.L. 788, sec. 1 et seq., as amended January 12, 1970, P.L. (1969) 456, sec. 1 et seq., 35 P.S. § 6001 et seq., [see now Act of July 7, 1980, P.L. 380, 35 P.S. § 6018.101 et seq., Pa. Const., Art. I, § 27; section 2 of the Sherman Antitrust Act of July 2, 1980, 26 Stat. 209, as amended, 15 U.S.C.A. § 2, as amended, and other laws of the United States and the Commonwealth of Pennsylvania prohibiting unlawful restraints of trade and unfair competition.

The court held hearings on the issues raised in defendant's objections on March 4, 6, 7, 1980 and November 7, 1980. After consideration of evidence adduced at those hearings, briefs and argument before the undersigned on January 16, 1981, the court concludes defendant's preliminary objections must be dismissed.

Section 406 of the Eminent Domain Code states "[p]reliminary objections shall be limited to and

shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property. . . ." 26 P.S. § 1-406(a). As this statutory provision indicates, the scope of judicial review in cases such as this is limited.

"First, it is to be presumed that municipal officers properly act for the public good. . . . Second, courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion. . . . Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the *wisdom* of municipal actions and *judicial* discretion should not be substituted for *administrative* discretion. . . ." Weber v. Philadelphia, 437 Pa. 179, 183, 262 A. 2d 297, 299 (1970). (Emphasis in original.)

Where a declaration of taking is challenged, a heavy burden rests upon condemnee to prove condemnor acted in a fradulent or capricious manner: Washington Park, Inc. Appeal, 425 Pa. 349, 353, 229 A. 2d 1, 3 (1967); Blank v. Columbia Gas of Pennsylvania, Inc., 11 Pa. Commonwealth Ct. 304, 310, 314 A. 2d 880, 883 (1974).

In the instant action, defendant has not questioned the fact that the county appropriated Veteran's Quarry for a legitimate public use. Nor has defendant alleged that the taking was motivated by fraud, collusion or bad faith. Rather, defendant claims Montgomery County's failure to comply with various statutory provisions and to consider certain environmental factors prior to filing the declaration of taking constituted arbitrary action amounting to an abuse of discretion.

Defendant presented evidence that on September 14, 1978 the Montgomery County Solid Waste

Management Plan made no provision for the use of Veteran's Quarry as a sanitary landfill. No such amendment to the plan had been submitted for approval by the Plymouth Township Planning Commission, the Montgomery County Planning Commission or the Pennsylvania Department of Environmental Resources. The county had neither applied for nor received DER permits necessary for the operation of a sanitary landfill at Veteran's Quarry. Since the county could not have used the property for the purpose for which is was condemned on the date of the taking, defendant concludes the condemnation was unlawful.

The court cannot accept the argument that noncompliance with the Solid Waste Management Act on the date of the taking vitiates the county's power to condemn. A careful reading of the act reveals no requirement that a county comply with its provisions prior to taking a property for future use as a solid waste disposal facility. Section 2(3) of the act states that one of its purposes is to "[r]equire permits for the *operation* of . . . disposal systems." Section 7 provides that "[i]t shall be unlawful for any . . . county . . . *to use* [its] land . . . as a solid waste processing or disposal area . . . without first obtaining a permit. . . ." Finally, section 9(1) and (2) prohibits the *"construction, alteration or operation"* of such a facility without prior DER approval. (Emphasis supplied.) Nor do the administrative regulations promulgated to implement the act, 25 Pa. Code § 75.1 et seq., limit the county's power of eminent domain. Thus, the county's failure to meet the requirements of these provisions prior to condemnation does not constitute an arbitrary exercise of power.

Defendant claims the county violated not only the letter, but also the spirit of the Solid Waste Management Act. Section 2(2) states at 35 P.S. §6002(2): ". . . it is the purpose of this act to: (2) Utilize, wherever feasible and desirable, the capabilities of private enterprise in accomplishing the desired objectives of an effective solid waste management program. . . ."

The record reflects that A.J.S. Enterprises, Inc., had acquired the property for use as a demolition and construction waste disposal facility. Defendant argues that since it already was performing the function for which the county was taking the quarry, the condemnation violated the second stated purpose of the Solid Waste Management Act.

Again, defendant misinterprets the act. The statute merely suggests that private resources be used wherever feasible and desirable but does not affirmatively require their utilization: Kavanaugh v. London Grove Township, 33 Pa. Commonwealth Ct. 420, 423, 382 A. 2d 148, 150 (1978), affirmed, 468 Pa. 133, 404 A. 2d 393 (1979). Evidence adduced at the hearings indicates that the county acquired this site as a dumping ground for solid wastes of various types, including construction and demolition waste. Therefore, defendant's continued operation of a landfill at Veteran's Quarry for a particular type of waste disposal was inconsistent with the county's proposed use.

Next, defendant contends the taking was unlawful in that it violated Pa. Const., Art. I, §27. That provision states:

"The people have a right to clean air, pure water, and to the preservation of the natural, scenic, his-

toric and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

In Community College of Delaware County v. Fox, 20 Pa. Commonwealth Ct. 335, 358, 342 A. 2d 468, 481-482 (1975), the court noted that boroughs, townships, counties and cities of the Commonwealth "have the responsibility to apply the Section 27 mandate as they fulfill their respective roles in the planning and regulation of land use." This responsibility as trustee of public natural resources requires the county to consider environmental factors when exercising its power of eminent domain: Id. In determining whether Montgomery County's condemnation of the subject property comports with this constitutitonal provision, the court must test the decision by a three-fold standard:

"(1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?" Payne v. Kassab, 11 Pa. Commownealth Ct. 14, 29, 30, 312 A. 2d 86, 94 (1973), affirmed, 468 Pa. 226, 361 A. 2d 263 (1976).

Defendant presented testimony that it had initiated a resource recovery project as part of its landfill operation. A.J.S. Enterprises had developed a

process whereby it could recover recyclable metals and wood from construction and demolition waste. Defendant argues that Veteran's Quarry is uniquely suited to this environmentally beneficial reclamation experiment. There was testimony that county officials had inspected and considered utilizing several other quarries located in Montgomery County as sanitary landfills. Therefore, defendant concludes, the county's condemnation of Veteran's Quarry, rather than an alternate property, amounts to an abuse of discretion, in that the environmental benefit to be derived from defendant's private resource recovery landfill operation clearly outweighs the benefit to the county in using this property for general solid waste disposal.

In advancing this argument, defendant has confused the power of the county to condemn with the wisdom of the county's condemning a particular property. When applying the Payne standards to the county's exercise of the power of eminent domain, the reviewing party must recall the limited scope of judicial review of such decisions. The examination of potential risks of environmental harm and anticipated social benefits to be derived from the governmental action is restricted to the actual taking being challenged.

The courts of this Commonwealth have held repeatedly that the wisdom of a condemnor's choice in appropriating one site rather than another is irrelevant to the inquiry whether the power to condemn was exercised properly against the parcel in question: Duquesne Light Co. v. Upper St. Clair Township, 377 Pa. 323, 338, 105 A. 2d 287, 294 (1954); Lesher v. American Telegraph and Telephone Co., 1 Pa. Commonwealth Ct. 522, 525-526, 276 A. 2d 325, 326-327 (1971); Blank v. Columbia

Gas of Pennsylvania, Inc., supra, at 309, 314 A. 2d at 882. Condemnee cannot enlarge the scope of review by interpreting the Payne test to require the balancing of the environmental benefit of its landfill operation against that proposed by the county.

As we have stated above, the County of Montgomery was under no obligation to comply with the requirements of the Solid Waste Management Act or its attendant regulations prior to filing the declaration of taking of Veteran's Quarry. The record demonstrates the county made a reasonable effort to reduce environmental incursion to a minimum when its officials conducted windshield inspections and consulted other engineers to confirm that the use of Veteran's Quarry as a sanitary landfill was feasible.

Finally, testimony demonstrates that the risk of environmental harm resulting from the proposed use of this property as a sanitation landfill is clearly outweighed by the anticipated benefits to the county in obtaining a sorely needed site for solid waste disposal. Thus, there is sufficient evidence to sustain a finding that the county complied with Pa. Const., Art. I, §27, in condemning this land.

Defendant asserts as its final objection that the declaration of taking is unlawful in that it violates the Sherman Antitrust Act, 15 U.S.C.A. §2, and other Federal and state statutes prohibiting unlawful restraints of trade and unfair competition. The court is at a loss to understand how the county's condemnation of one quarry for the continued operation of its solid waste management program constitutes an "attempt to monopolize the sanitary landfill business in Montgomery County." The mere taking of this property has no such effect. Any argument that the county's present or proposed

sanitary landfill activities amount to unfair competition is not justiciable in the instant proceedings. Therefore, we reject defendant's final contention that the taking here violates such statutes.

For all the foregoing reasons, the court concludes the action of Montgomery County in condemning Veteran's Quarry was accomplished in accordance with applicable statutory law. The court further concludes the county's exercise of its power of eminent domain against this property was neither fradulent, collusive, arbitrary, nor undertaken in bad faith. Accordingly, the court enters the following

### ORDER

And now, February 5, 1981, after hearing and consideration of evidence presented and briefs, defendant-condemnee, A.J.S. Enterprises, Inc.'s preliminary objections to plaintiff-condemnor, County of Montgomery's declaration of taking are dismissed.